UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BRENDA AGUAYO, MARIA MALDONADO, MARIA CLIMACO, OLIVIA ORTIZ, ANA PALOMARES, SUSANA MARTINEZ and NICANOR QUIROZ, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>BASSAM ODEH, INC. and BASSAM MOHAMMED ODEH,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br><br>CIVIL ACTION NO. 3:13-CV-2951-B |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiffs' Motion to Conditionally Certify a Collective Action and to Issue Notice (doc. 5). For the reasons stated below, Plaintiffs' Motion is hereby **GRANTED in part** and **DENIED in part**.

I.

BACKGROUND

This case arises out of a Fair Labor Standards Act ("FLSA") claim for unpaid overtime compensation. 29 U.S.C. §§ 201, *et seq*. The named plaintiffs are seven current or former non-exempt fast food employees who worked at the same Jack in the Box restaurant ("Jack in the Box # 725"), located at 502 N. O'Connor Road in Irving, Texas. Defs.' Resp. 2. Jack in the Box #725 is owned and operated by Defendant Bassam Odeh, Inc. ("BOI"). *Id.* BOI owns and operates two other Jack in the Box franchises in Texas, and Defendant Bassam M. Odeh ("Odeh") owns an

interest in certain other companies that own and operate other Jack in the Box franchises. *Id.* He also owns an interest in other companies which own Qdoba franchise restaurants. *Id.*

Plaintiffs claim that they regularly worked in excess of 40 hours per week but were not paid overtime for their labor. Compl. 2. Instead, they allege that Defendants engaged in a scheme in which Plaintiffs' overtime hours were falsely credited to fictitious employees. *Id.* As part of this scheme,

> [c]hecks for straight-time hours worked over 40 in a workweek by Plaintiffs are/were then issued to those fictitious employees, but at an hourly rate less than Plaintiffs' respective regular rates of pay. Those fictitious employee checks are/were then cashed by Defendants, and after deduction for a check processing fee, the Plaintiffs are/were then paid cash for hours worked over 40 in a workweek at straight-time only, but typically at an amount less than their regular rates of pay.

*Id.* Defendant BOI conducted an investigation and identified the alleged five fictitious employees as "Eva Ruiz," "Jade Perez," "Margarita Gallegos," "Marlen Martinez," and "Alejandro Medrano." Defs.' Resp. 3. BOI received I-9 forms for these fake individuals, which were signed by the manager of Jack in the Box #725, Elizabeth Quiroz Campos. *Id.* at 3-4. Ms. Campos is the daughter of Plaintiff Nicanor Campos. *Id.*

Plaintiffs are all "of Hispanic race or ancestry, or otherwise have Hispanic ethnic characteristics." Compl. 11. They insist that Defendants have applied the scheme described above on the basis of their race and that Defendants further threatened to have Plaintiffs and/or their family members deported if they complained. *Id.* Plaintiffs also claim that other Hispanic employees were subjected to this alleged scheme and were threatened by BOI. *See, e.g.,* Aguayo, Maldonado Decls.

Plaintiffs filed their Motion to Conditionally Certify a Collective Action and to Issue Notice

(doc. 5) on July 31, 2013. Defendants oppose this Motion and filed their Response (doc. 13) on September 13, 2013. Plaintiffs filed their Reply (doc. 15) on September 27, 2013. The Court granted Defendants leave to file their Sur-Reply (doc. 16), which they did on October 4, 2013. The Motion is now ripe for the Court's review.

## II.
## LEGAL STANDARD

The FLSA provides that a suit may be instituted by "one or more employees for and in behalf of himself or themselves and other employees similarly situated" to recover unpaid overtime and liquidated damages from employers who violate the statute's overtime provisions. 29 U.S.C. § 216(b). "This type of collective action follows an 'opt-in' procedure in which '[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.'" *Vogt v. Texas Instruments, Inc.*, No. 3:05-CV-2244-L, 2006 WL 4660134, at *2 (N.D. Tex. Sept. 19, 2006) (quoting 29 U.S.C. § 216(b)). Accordingly, "those who choose not to opt-in to a class action under § 216(b) are not bound by and may not benefit from the judgment." *Hall v. Burk*, No. Civ. 301CV2487H, 2002 WL 413901, at *2 (N.D. Tex. Mar. 11, 2002).

District courts have discretion to allow a party asserting claims on behalf of others to notify potential plaintiffs that they may choose to "opt in" to the suit. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *see also Vogt*, 2006 WL 4660134, at *2. Though the Fifth Circuit has not adopted a particular standard to be used in determining whether to allow notification, the prevailing view among federal courts is to follow the two-step approach outlined in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See Barnett v. Countrywide Credit Indus. Inc.*, No. CIV.A.3:01-CV-1182-

M, 2002 WL 1023161, at * 1 (N.D. Tex. May 21, 2002).

Under *Lusardi*, the court first makes an inquiry into whether the plaintiff has provided sufficient evidence that similarly situated potential plaintiffs exist. *Id.* "Because the court generally has minimal evidence at this stage, the determination is made using a fairly lenient standard and typically results in conditional certification of a conditional class." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 287 (N.D. Tex. 2012). Although courts generally require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," a factual basis for the allegations must exist and there must be a showing of some "identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." *Id.* (internal citations and quotation marks omitted). After granting conditional certification, the court will reexamine the class once notice, time for opting-in, and discovery have all taken place. *Barnett*, 2002 WL 1023161, at *1. If the court finds that the class is no longer made up of similarly situated persons, it may decertify the class, usually upon a motion filed by the defendant. *Id.*

## III.

## ANALYSIS

Plaintiffs seek to certify the following class: "similarly situated non-exempt fast food restaurant employees who work, or have worked, for Defendants in Texas and Louisiana in the three years prior to the filing of this Motion who were not paid overtime compensation for all hours worked over 40 during each and every workweek." Mot. 2. Defendants oppose Plaintiffs' Motion and argue that if any notice is appropriate, it should be limited to non-exempt employees who worked during the relevant time period at Jack in the Box #725. Defs.' Resp. 12.

A.      *Conditional Certification*

As Plaintiffs' Motion concerns the first or "notice" stage of classification, they must show that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff[s] in relevant aspects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Morales v. Thang Hung Corp.*, No. 4:08-2795, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009). If the Court finds that the action "arises from circumstances purely personal to the plaintiff[s], and not from any generally applicable rule, policy, or practice," it may deny the conditional certification. *Tolentino v. C & J Spec-Rent Services Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010)(internal quotation marks omitted).

    1.      Do Aggrieved Individuals Exist?

Plaintiffs here have stated a cognizable claim under Section 207 of the FLSA, which requires employers compensate non-exempt employees for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1). Plaintiffs have alleged that Defendants denied them their overtime pay by first crediting their overtime hours as regular time to fictitious employees and then cashing checks to these fake employees to pay to Plaintiffs at reduced hourly rates. Five of the seven plaintiffs have also provided declarations identifying the fictitious employees to whom their overtime was credited and further alleging that this scheme was applied to all BOI employees of Hispanic race or origin. *See, e.g.,* Aguayo Decl. 2-3. These declarations indicate that Defendants may have implemented this policy with respect to different employees, and that additional plaintiffs may wish to join the collective action. *See Tolentino*, 716 F. Supp. at 649. Further, Defendants have conceded that one of the people Plaintiffs claim

threatened to deport them if they complained about this scheme, Erika Longoria, has been a district manager for nine Jack in the Box restaurants owned and operated by BOI or other entities in which Odeh owns an interest. Defs. Resp. 4. Consequently, the Court concludes that there is a reasonable basis for crediting the assertion that other aggrieved employees exist. *See Jones*, 281 F.R.D. at 290.

    2.    <u>Are There Aggrieved Individuals who are Similarly Situated to Plaintiffs?</u>

To establish that employees are similarly situated, a plaintiff must show that they are "'similarly situated' with respect to their job requirements and with regard to their pay provisions. The positions need not be identical but similar." *Barnett*, 2002 WL 1023161, at *2 (internal quotation marks). "A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Tolentino*, 716 F. Supp. 2d at 650 (internal quotation marks omitted).

Plaintiffs' declarations indicate the five declarants all performed the duties of a fast food employee, namely food preparation, food service, and cleaning. *See* Aguayo, Maldonado, Ortiz, Climaco, Quiroz Decls. Four of the five claim to have worked at "several other stores in Dallas/Ft. Worth area." *See* Aguayo, Maldonado, Ortiz, Quiroz Decls. Plaintiffs also allege that the fake employees to whom their overtime work was attributed were paid at non-overtime rates of $7.25–$8.00 per hour, which, when reduced for check processing fees allegedly deducted by Defendants, resulted in cash payments to Plaintiffs below their regular hourly wages. *See* Aguayo, Maldonado, Ortiz, Climaco, Quiroz Decls.

Defendants do not deny that Plaintiffs performed these duties or that they may have worked at these other locations. They also provide no information regarding Plaintiffs' (or the fake employees') wages. Instead Defendants acknowledge that "employees of a Jack in the Box franchise

restaurant owned by BOI or another entity in which Odeh owns an interest may have occasionally worked in another Jack in the Box restaurant owned by BOI or another entity in which Odeh owns an interest," and clarify that "an employee of a Jack in the Box restaurant would not have been assigned to work at a different restaurant concept, such as a Qdoba, and . . . an employee of a Qdoba restaurant would not have worked at a Jack in the Box." Defs.' Resp. 3. Defendants also indicate that, even if Plaintiffs were told to work at restaurants in the Dallas/Ft. Worth area, their paychecks for each pay period would have come from their "home" restaurant, or Jack in the Box #725. *Id.* Defendants also argue that Plaintiffs have offered no declaration from any employee who worked at a restaurant other than Jack in the Box #725, and have also not provided evidence that any fictitious employee was associated with any other restaurant. Defs.' Resp. 1.

The Court concludes that this action does not arise out of circumstances purely personal to Plaintiffs. Indeed, their similar job duties, wages, and experiences with the alleged pay scheme indicate that there is a "meaningful nexus that binds [their] claims together" and that it is "likely that similarly situated aggrieved individuals exist in the case." *Jones* 281 F.R.D. at 291.

    3.    <u>Do Similarly Situated Aggrieved Individuals Want to Opt in to the Lawsuit?</u>

For the reasons already discussed, the Court finds it likely that similarly situated aggrieved individuals may want to opt in. Though Plaintiffs only provide declarations from themselves, courts have allowed for class certification without either the submission of statements from similarly situated employees or affidavits from named plaintiffs that provide specific information about other employees. *See Jones*, 281 F.R.D. at 291 (collecting cases). "In fact, district courts in the Fifth Circuit have found as few as two declarations to satisfy the first stage fo certification proceedings." *Id.* (citing *Tolentino*, 716 F. Supp. 2d at 653). Here, Plaintiffs have submitted five declarations indicating they

were victims of a scheme to deny them overtime pay, and that they are aware of others who were similarly denied pay. Given their declarations and the alleged breadth of this scheme, the Court finds it likely that other similarly situated aggrieved individuals may want to opt in.

Though the Court finds that Plaintiffs have satisfied their burden for conditional certification, it nevertheless takes issue with the class of individuals Plaintiffs wish to certify. Plaintiffs request certification of "similarly situated non-exempt fast food restaurant employees who work, or have worked, for Defendants in Texas and Louisiana in the three years prior to the filing of this Motion who were not paid overtime compensation for all hours worked over 40 during each and every workweek." Mot. 2. However, Plaintiffs have provided nothing to indicate that restaurants in Louisiana or even throughout the entire state of Texas are involved in this alleged scheme. Thus their class is too broad for the evidence they have offered. This does not mean, though, that the Court agrees with Defendants' suggestion to limit the class just to individuals at Jack in the Box #725. Not only have Plaintiffs alleged that they worked at other locations throughout the Dallas/Ft. Worth area, but Defendants have conceded an overlap in management between Jack in the Box #725 and other Jack in the Box locations. Consequently, the Court finds confining the class to the one restaurant would likewise be inappropriate.

Regrettably, neither Plaintiffs nor Defendants have clearly identified all of the Jack in the Box restaurants owned or operated by Defendants where Plaintiffs allegedly worked. Though the parties acknowledge Jack in the Box #725 was Plaintiffs' "home" location, some of the plaintiffs have claimed they also worked at several franchises in the Dallas/Ft. Worth area. This seems plausible given Defendants' indication that BOI owns and operates two other Jack in the Box franchises in Irving and Grand Prairie, and given Defendants' acknowledgment that some employees may have

occasionally worked at other locations. Defs.' Resp. 3. Defendants have further conceded that Erika Longoria—whom Plaintiffs claim threatened them not to complain about the fictitious employees—served as the district manager for nine Jack in the Box franchises owned and operated by BOI or by companies in which Odeh owns an interest. Defs. Resp. 10.

Based on this limited information and the Court's analysis above, the Court concludes that the civil action should be conditionally certified and the prospective class may only include:

> All current and former non-exempt restaurant employees, who claim that they were not paid overtime hours and who work or worked at the following locations up to three years before the Court approves notice: (1) Jack in the Box #725; (2) BOI's other Jack in the Box restaurants in Irving and Grand Prairie; and, to the extent not already covered, (3) the nine Jack in the Box restaurants owned and operated by BOI or by companies in which Odeh owns an interest and for which Erika Longoria was district manager.

The Court thus **ORDERS** the parties to identify the names and addresses of the Jack in the Box restaurants included above so that the Court may define the class properly.

*B.    Notice*

Having determined that a certification is appropriate, the next consideration is notice. Defendants have raised several objections with respect to Plaintiff's proposed notice. They have also requested they be allowed a reasonable time to inspect any Spanish-language version of the notice that Plaintiffs wish to send. Finally, they propose, and Plaintiffs agree, that the Court should order the parties to attempt to resolve any differences regarding the substance of the notice. Accordingly the Court **ORDERS** the parties to confer and attempt to agree on the contents of the notice. If the parties are unable to come to an agreement, the Court further **ORDERS** they submit a concise statement to the Court detailing any issues they could not resolve.

Defendants have also objected to the data that Plaintiffs request they produce. Plaintiffs ask that Defendants provide, "in usable electronic format, the full names, last known addresses, last known residential and cell phone numbers, e-mail addresses, dates of birth, and dates of employment" for all potential members of the class. Pls.' Reply 9. Plaintiffs also request that Defendants provide, within one business day of notification from Plaintiffs' counsel, the last four digits of Social Security numbers for putative members whose mail is returned as undeliverable. *Id.* at 9-10. Defendants insist they should only be required to produce at this time the names and last known addresses of any persons to whom notice may be sent. Defs.' Resp. 13. They further request that they only be required to produce information such as the last four digits of Social Security numbers or dates of birth within seven days of a request from Plaintiffs' counsel after mailed notice has been returned as undeliverable. *Id.* Lastly, they object to having to include the dates of employment within the relevant time period for notice set by the Court. *Id.*

After reviewing the parties' requests, the Court finds it appropriate to limit the personal information of class members that Defendants will be required to produce. Accordingly, the Court **ORDERS** Defendants produce the full names (including middle names if known), last known addresses, and dates of employment for all individuals to whom notice may be sent. For individuals whose mail is returned as undeliverable, Defendants are further **ORDERED** to provide Plaintiffs' counsel with the last four digits of such individuals' Social Security numbers and their last known residential and cell phone numbers so that Plaintiffs may locate new addresses for the returned notices. Defendants shall provide this additional information **within three business days** of notification by Plaintiffs' counsel that mail has been returned as undeliverable.

IV.

## CONCLUSION

In conclusion, Plaintiffs' Motion is **GRANTED in part** and **DENIED in part** as follows:

1. The Court hereby **conditionally certifies** this collective action.;

2. The prospective class may only include all current and former non-exempt restaurant employees, who claim that they were not paid overtime hours and who work or worked at the following locations up to three years before the Court approves notice: (1) Jack in the Box #725; (2) BOI's other Jack in the Box restaurants in Irving and Grand Prairie; and, to the extent not already covered, (3) the nine Jack in the Box restaurants owned and operated by BOI or by companies in which Odeh owns an interest and for which Erika Longoria was district manager.;

3. The Court **ORDERS** the parties to submit to the Court **within one week of this Order** the names and addresses of the Jack in the Box restaurants identified above so that the Court may properly identify the class.;

4. The Court **ORDERS** the parties to confer and submit a proposed notice to the Court, revised in accordance with the Court's comments above. The parties should discuss any Spanish-language version of the notice that Plaintiffs wish to send. If the parties are unable to agree on the contents of the notice, they shall submit to the Court a brief joint statement explaining any outstanding issues. The proposed notice or joint statement is due **within two weeks of this Order.**; and

5. The Court **ORDERS** the Defendants to produce to Plaintiffs' counsel, in

usable electronic format and **no later than two weeks from this Order**, the full names (including middle names if known), last known addresses, and dates of employment for all individuals to whom notice may be sent. For individuals whose mail is returned as undeliverable, the Court further **ORDERS** Defendants provide Plaintiffs' counsel with the last four digits of such individuals' Social Security numbers and last known residential and cell phone numbers **within three business days** of notification by Plaintiffs' counsel that notice has been returned as undeliverable.

Once the Court has properly defined the class and has approved notice, it will direct Plaintiffs in a separate order to file notice and consent forms to each potential class member. The Court will similarly provide a date by which potential class members will have to file consent forms with the Court to join the collective action.

**SO ORDERED.**

**SIGNED: February 26, 2014.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE