UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BRENDA AGUAYO, et al.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-2951-B |
| | § | |
| **BASSAM ODEH, INC., et al.,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Legal Fees and Costs. Doc. 123.[1] The Court

**GRANTS in part** Plaintiffs' Motion, finding that Plaintiffs are entitled to attorneys' fees and costs

under 29 U.S.C. § 216(b) and 42 U.S.C. § 1988(b), but not in the amounts requested. The Court

therefore reduces the fees awarded in accordance with the lodestar standards of reasonableness.

## I.

## BACKGROUND

This is a class action employment discrimination case for alleged discrimination on the basis

of race, ancestry, and ethnic characteristics. Plaintiffs brought claims under: (1) the federal Fair

Labor Standards Act (FLSA); and (2) 42 U.S.C. § 1981 (Section 1981). Doc. 123, Pls.' Br. Supp.

Mot. for Att'y Fees & Costs 1–2 [hereinafter Pls.' Br.]; Doc. 67, Am. Compl. ¶ 2.

In short, a number of individuals employed at Defendant Bassam Mohammed Odeh's Jack

in the Box restaurants worked under fake names for overtime hours without being paid an overtime

---

[1]The Court notes that both Plaintiffs' Motion for Legal Fees and Costs and its supporting brief are filed under Docket No. 123. That is confusing, but any efforts to renumber the docket at this point would likely do more harm than good. So please keep in mind the document's title when "Doc. 123" appears here.

- 1 -

premium Doc. 123, Pls.' Br. 1; Doc. 134, Defs.' Resp. to Pls.' Mot. for Att'y Fees & Costs 3 [hereinafter Defs.' Resp.]. The two sides disagree, however, about whether Plaintiffs did so: (1) as part of some sort of nefarious scheme enacted by Odeh, facilitated by senior management, and designed to reduce labor costs; or (2) on their own initiative for their own financial benefit. *Compare* Doc. 123, Pls.' Br. 1, *with* Doc. 134, Defs.' Resp. 6–7.

But that point is largely moot because this two-and-a-half-year lawsuit has come to a close. Defendants tendered, and Plaintiffs accepted, a Second Amended Offer of Judgment under Federal Rule of Civil Procedure 68 for $704,945.68. Doc. 134, Defs.' Resp. 9 (citing Doc. 118, Pls.' Notice of Acceptance of Defs.' Rule 68 Offer of J.); Doc. 135, Defs.' Resp. App. 627–30. All that remains now is the issue of attorneys' fees and costs.

Plaintiffs moved for attorneys' fees and costs in December 2015. *See* Doc. 123, Pls.' Mot. for Att'y Fees & Costs. Defendants responded and Plaintiffs replied. Doc. 134, Defs.' Resp.; Doc. 138, Pls.' Reply to Defs.' Resp. [hereinafter Pls.' Reply]. Defendants, with leave of court, then filed their Sur-Reply in August 2016. *See* Doc. 143, Order (granting leave to file sur-reply); Doc. 141, Defs.' Sur-Reply to Pls.' Reply [hereinafter Defs.' Sur-Reply]. The Motion is now ripe for review.

## II.

## LEGAL STANDARD

Rule 54(d) of the Federal Rules of Civil Procedure governs costs and attorneys' fees. Rule 54(d)(1) allows courts to award costs[2] other than attorneys' fees to prevailing parties. Under the American Rule, however, prevailing parties generally cannot recover attorneys' fees without a statutory or contractual basis. *Summit Valley Indus., Inc. v. United Bhd. of Carpenters & Joiners*, 456

---

[2] The term "costs" is defined by 28 U.S.C. § 1920. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987).

U.S. 717, 721 (1982). Rule 54(d)(2) provides the procedure for the prevailing party, by motion, to specify the statute, rule, or other grounds entitling them to the award. Here, Plaintiffs moved for costs and fees under the FLSA and Section 1981. Both provide for an award of fees and costs to the prevailing party.

The FLSA authorizes prevailing plaintiffs to collect reasonable attorneys' fees and costs associated with the prosecution of their FLSA claims. *See* 29 U.S.C. § 216(b); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 & n.7 (5th Cir. 2006). "[A]nd the award of attorneys' fees in such a proceeding is mandatory." *Bell v. Able Sec. & Investigations, Inc.*, No. 3:10-cv-1945-L, 2011 WL 2550846, at *3 (N.D. Tex. June 28, 2011).

Prevailing plaintiffs can similarly recover under Section 1981 by virtue of 42 U.S.C. § 1988(b), which carves out another exception to the American Rule. *Dearmore v. City of Garland,* 519 F.3d 517, 520–21 (5th Cir. 2008). In particular, it "provides that 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs.'" *Id.* (quoting 42 U.S.C. § 1988(b)).

## III.

## ANALYSIS

Attorneys' fees and costs are, as should be clear by this juncture, related issues—and the only issues left for the Court to decide in this case. Yet each demands a different analysis. With that in mind, the Court will address each in turn and then consider Plaintiffs' request for post-judgment interest.

A.     *Attorneys' Fees*

Courts in the Fifth Circuit "apply a two-step method for determining a reasonable attorneys'

fee award." *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016) (citing *Jimenez v. Wood Cty.*, 621 F.3d 372, 379 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011)). Courts first calculate the lodestar, "'which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.' In calculating the lodestar, '[courts] should exclude all time that is excessive, duplicative, or inadequately documented.'" *Id.* (quoting *Jimenez*, 621 F.3d at 379–80).

"There is a strong presumption of the reasonableness of the lodestar amount." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan*, 448 F.3d at 799). But after calculating the lodestar, courts move to the second step and evaluate the resulting value in relation to "the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*" *Jimenez*, 621 F.3d at 380 (citing 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989)). Those factors are addressed more in depth below in Section III.A.2.

Under certain circumstances, "a district court may enhance or decrease the amount of attorneys' fees based on 'the relative weights of the twelve'" *Johnson* factors. *Black*, 732 F.3d at 502 (quoting *Saizan*, 448 F.3d at 800). Lodestar enhancements, however, are permitted only in rare and exceptional circumstances. *Perdue*, 559 U.S. at 554. And "the lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black*, 732 F.3d at 502.

The Court therefore begins by calculating the lodestar of the attorneys' fees requested and addressing any relevant arguments raised by Defendants. Then the Court examines the proposed award in light of the *Johnson* factors.

1.      The Lodestar

Plaintiffs initially requested $2,145,954.45 in attorneys' fees under Federal Rules of Civil Procedure 54(d) and 58, the FLSA, and Section 1981. Doc. 123, Pls.' Br. 2. This was predicated on a base lodestar of $2,174,942.60,[3] which Plaintiffs then reduced on their own initiative by: (1) 10% for all lawyer fees, based on billing judgment; (2) 10% for all lawyer and staff fees, based on the fact that seven out of the 38 initial plaintiffs did not participate in discovery and were dismissed; (3) 25% for lead and bilingual paralegal fees to account for clerical, rather than legal, work; and (4) 50% for legal assistant fees to account for clerical work. *Id.* at 3. Those reductions resulted in an adjusted lodestar of $1,650,734.19. *Id.*

Defendants urged the Court to reduce this figure, deny Plaintiffs any enhancement under *Johnson,* and ultimately award them no more than $550,000 in attorneys' fees. Doc. 134, Defs.' Resp. 12–44, 47. Their arguments fall into three broad categories: (1) Plaintiffs' time entries showed tasks that were excessive, duplicative, questionable, unbelievable, unnecessary, vague or insufficiently documented, unrecoverable, or subject to partial reduction; (2) Plaintiffs' counsel's rates are unreasonable; and (3) Plaintiffs were not as successful as they indicate in litigating this case. *See* Doc. 134, Defs.' Resp. -i- to -ii-.

In their Reply, Plaintiffs acknowledged and corrected a handful of billing errors then agreed to write off a portion of the time that the Wyatt Law Firm spent reviewing "unproduced" documents. Doc. 138, Pls.' Reply 10–16. For that reason, Plaintiffs submitted an amended Master Lodestar

---

[3] This "base lodestar" "includ[ed] a 50% write off of legal fees after the date of the Second Amended Offer of Judgment to include FLSA fees only as explained below Section III.A.1.i.F in detail." Doc. 123, Pls.' Br. 3.

Spreadsheet that provides the following values[4]:

| Firm | Professional | Position | Rate | Hours | Lodestar |
|------|-------------|----------|------|-------|----------|
| Baron & Budd | Russell Budd | Attorney | $700 | 18.306 | $12,814.20 |
| Baron & Budd | Allen Vaught | Attorney | $450 | 718.146 | $323,165.70 |
| Baron & Budd | Sangeeta Kuruppillai | Attorney | $350 | 83.673 | $29,285.55 |
| Baron & Budd | Ryan Burton | Attorney | $310 | 637.308 | $197,565.48 |
| Baron & Budd | Melinda Arbuckle | Attorney | $295 | 312.984 | $92,330.28 |
| Baron & Budd | Rob Hudock | Attorney | $250 | 28.107 | $9,837.45 |
| Baron & Budd | Celia Rivera | Paralegal | $210 | 469.5795 | $98,611.70 |
| Baron & Budd | Stephanie Perkins | Paralegal | $126 | 52.4475 | $6,608.39 |
| Baron & Budd | Paul Thornton | Assistant | $50 | 40.725 | $2,036.25 |
| Baron & Budd | Nick Smith | Assistant | $50 | 6.975 | $348.75 |
| Wyatt Law Firm | Paula Wyatt | Attorney | $500 | 898.7112 | $449,355.60 |
| Wyatt Law Firm | James Perrin | Attorney | $350 | 9.72 | $3,402.00 |
| Wyatt Law Firm | Ryan Toomey | Attorney | $285 | 200.0012 | $57,000.33 |
| Wyatt Law Firm | Toni Ramirez | Paralegal | $210 | 858.5136 | $180,287.86 |
| Wyatt Law Firm | Nora Lopez | Paralegal | $126 | 110.9479 | $13,979.44 |
| Wyatt Law Firm | Aundria Martinez | Paralegal | $126 | 71.7073 | $9,035.12 |
| **Total** | | | | **4,517.8522** | **$1,485,664.10** |

Defendants then—with leave of court—filed a sur-reply, reiterating the arguments in their

Response, and contending that: (1) Plaintiffs' hours should be reduced by at least 50% to correct for

---

[4]The following table provides the net amended lodestar values set forth in Plaintiffs' amended lodestar, which includes percentage write-offs that hamper the Court's ability to make further reductions to the hours or rates of Plaintiffs' counsel. *See* Doc. 139, Pls.' Reply App. 568, Ex. 1, Amended Master Lodestar Spreadsheet. To keep things simple, those write-offs were subtracted from Plaintiffs' counsel's hours by dividing Plaintiffs' adjusted lodestar value by each timekeeper's respective proposed hourly rate. *Id.* In many instances, that causes the unrealistic result of carrying hours billed out to the third or fourth decimal place. Nevertheless, the Court finds this the most straightforward and accurate way to proceed.

"[e]xcessive and [i]mproper [e]ntries"; (2) the lodestar should be reduced by at least 18% "to [a]ccount for Plaintiffs' [l]ack of [s]uccess"; and (3) Plaintiffs' counsel's proposed rates should be reduced. *See* Doc. 144, Defs.' Sur-Reply 2–9.

Having sketched out the parties' arguments in broad terms, the Court believes the most prudent course of action is to examine Plaintiffs' amended lodestar spreadsheet just like the lodestar formula: first by hours, then by rate. *See* Doc. 139, Pls.' Reply App. 568, Ex. 1, Amended Master Lodestar Spreadsheet. There are a myriad of challenges to both the proposed hours and rates in Plaintiffs' amended lodestar. So for clarity's sake, the Court will address each of those two subparts in the order they appear in Defendants' Response. *See* Doc. 134, Defs.' Resp. -i- to -ii-.

        *i.*        *Hours reasonably expended by Plaintiffs*

As set forth above, the Court will "exclude all time that is excessive, duplicative, or inadequately documented." *Combs*, 829 F.3d at 392 (internal quotations and citations omitted). And in doing so, the Court may make line-item cuts or "use 'a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when fee documentation is voluminous.'" *Tow v. Speer*, No. H-11-3700, 2015 WL 12765414, at *6 (S.D. Tex. Aug. 17, 2015) (quoting *Compass Bank v. 288/59 GP LLC*, No. H-09-4099, 2011 WL 739341, at *2 (S.D. Tex. Feb. 23, 2011)); *see also Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("Where fee documentation is voluminous . . . an hour-by-hour review is simply impractical and a waste of judicial resources."). Plaintiffs bear the "burden of establishing the appropriate hours." *Tow*, 2015 WL 12765414, at *6 (citing *Saizan*, 448 F.3d at 799).

a.       Excessive, duplicative, or otherwise unnecessary time entries

1.       Intake and file openings

● **Rivera and Ramirez's duplicate work**

Defendants claim that paralegals Celia Rivera, of the Law Offices of Daniel Ramirez, and Toni Ramirez, of the Wyatt Law Firm, duplicated efforts during intake. Rivera "contact[ed] potential Plaintiffs, conduct[ed] initial fact investigation, open[ed] the file[s], and obtain[ed] signatures on intake paperwork," while Ramirez "bill[ed] to open the same file." Doc. 134, Defs.' Resp. 14.[5]

Plaintiffs do not directly address Rivera and Ramirez's duplication, but acknowledge "some error," for which they reduced Rivera's hours from 803.7 to 802.7. Doc. 138, Pls.' Resp. 11; *compare* Doc. 139, Pls.' Reply App. 568, Ex. 1, Amended Master Lodestar Spreadsheet, *with* Doc. 124-14, Pls.' App. 252, Ex. 2, Master Lodestar Spreadsheet.[6] A review of the entries Defendants flagged shows Plaintiffs did not cut enough. *See* Doc. 135, Defs.' Resp. App. 1718–22.[7] For example:

| | | | | |
|---|---|---|---|---|
| Ramirez | 6/26/2013 | 0.2 | TC with Olivia Ortiz regarding potential causes of action | 514 |
| | 7/16/2013 | 1.5 | Work with Paula on TC with clients Palomares, Martinez, Ortiz, Climaco | 515 |
| | 7/23/2013 | 3.0 | Opening of file; tc with client Olivia Ortiz; review of file | 515 |
| Rivera | 7/18/2013 | 1.0 | TC Olivia Ortiz, 1st convo re case; set up meeting 1.0 | 397 |
| | 7/20/2013 | 4.5 | Initial meet. w/ Olivia Ortiz, begin file | 397 |

---

[5] Defendants also suggest intake tasks are "non-compensable clerical work," but cite no authority for the proposition and predicate their argument on the following language: "setting aside that intake tasks . . . is [sic] non-compensable clerical work." Doc. 134, Defs.' Resp. 14. Accordingly, the Court does not believe Defendants argue that *all* intake hours should be struck, just the duplicative ones.

[6] It is not clear whether this reduction was for the duplicative intake.

[7] The numerical references to the far right of the offset time entries (*e.g.*, 514, 515, 397) refer to page numbers in Plaintiffs' Appendix (Doc. 124) that each disputed time entry appears on. The same goes for other disputed time entries presented below.

To be sure, not all of Ramirez and Rivera's entries are duplicative—but many, such as the ones above, are. That is true even if, as alleged below, both were sometimes needed due to translation issues. There are just too many redundancies. Defendants are correct that they "should not be charged for multiple firms opening the same file and conducting the same background fact investigation." Doc. 134, Defs.' Resp. 14. Thus, reductions on this point are warranted.

- • **Ramirez and Wyatt's duplicate work**

Defendants argue that Ramirez and attorney Paula Wyatt, together, "bill[ed] to open the same file . . . and . . . for more teleconferences to gather background facts." *Id.* (citing Doc. 135, Defs.' Resp. App. 1718). Defendants contend Baron & Budd attorneys billed for the same client intake as well. *Id.* (citing Doc. 124, Pls.' App. 353).

Plaintiffs responded by noting that Ramirez speaks Spanish while Wyatt does not, thus Ramirez "constantly ha[d] to translate whenever there were telephone conferences with the Plaintiffs, who were unsophisticated litigants and required a great deal of explanation of the legal process . . . in prepar[ation] . . . for depositions . . . [and after] obtain[ing] depositions." Doc. 138, Pls.' Reply 14. Plaintiffs contend Ramirez's translation services were also required for "review[ing] files which had Spanish language documents, [in addition to] answer[ing] discovery and . . . conference calls." *Id.* Nevertheless, they agreed to reduce Wyatt's lodestar by 10% and Ramirez's by 15%, noting both's lodestars had previously been reduced. *Id.* at 14–15.

Defendants, however, were not appeased, and made two arguments in their Sur-Reply: (1) that while "[s]ome additional attorney time may have been necessary because of the inherent time it takes to communicate through a translator[,] . . . identical time entries for Ms. Wyatt and Ms.

Ramirez extended well beyond matters that may have involved translation"; and (2) that "time entries by Ms. Ramirez simply for the purpose of translation are not properly taxed to Defendants under fee-shifting statutes." Doc. 144, Defs.' Sur-Reply 5 (*Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667, 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015)).

As to Defendants' first argument, the Court agrees. Examining the entries Defendants cite in their Response Appendix, the Court does not see how Plaintiffs' explanation suffices. Ramirez may indeed have had to translate for Wyatt during telephone conferences where Wyatt explained the legal process to clients, prepared them for depositions, or debriefed them afterwards. *See* Doc. 138, Pls.' Reply 14. Wyatt may also have utilized Ramirez's Spanish language skills to review Spanish language documents and discovery. And Ramirez's expertise as a paralegal, combined with the information she gained from clients in Spanish, certainly justifies her participation in case strategy discussions as well. Still, there are a number of entries that Defendants flag where Ramirez and Wyatt duplicated work that falls into none of the above categories. In particular:

| | | | | |
|---|---|---|---|---|
| Wyatt | 7/26/2013 | 1 | Compare wage history with other clients accounts | 478 |
| Ramirez | 7/26/2013 | 2.2 | Compare wage history with other client accounts | 516 |
| Wyatt | 7/28/2013 | 1.85 | Review of files with Toni | 479 |
| Ramirez | 7/28/2013 | 1.85 | Review of files with Paula | 516 |
| Wyatt | 7/28/2013 | 1.85 | Comparison of alias' check stubs with store numbers | 479 |
| Ramirez | 7/28/2013 | 1.85 | Comparison of alias' check stubs with store numbers | 516 |
| Wyatt | 8/1/2013 | 1.25 | Preparation of spreadsheet for damages | 479 |
| Ramirez | 8/1/2013 | 2.5 | Case Strategy conference with Paula and staff; assist with preparation of damages spreadsheet | 517 |
| Wyatt | 8/2/2013 | 1.3 | Meeting with staff re preparation of spreadsheet for damages | 480 |
| Ramirez | 8/2/2013 | 1.3 | Meeting with staff re damages spreadsheet | 517 |
| Wyatt | 8/8/2013 | 1.6 | Review of Palomares check stubs, alias name check stubs, and TC with client and Paula re discrimination | 517 |
| Ramirez | 8/8/2013 | 1.6 | Review of Palomares check stubs, alias name check | |

| | | | stubs, and TC with client and Toni re discrimination | |
|---|---|---|---|---|
| Wyatt | 9/20/2013 | 5.1 | Review of Climaeo, Maldonado, Martinez, Ortiz files as to check stubs, alias name stubs, W-2s; TC with clients and Toni | 480 |
| Ramirez | 9/20/2013 | 5.1 | Review of Climaco, Maldonado, Martinez, Ortiz files with additional documentation of check stubs, alias, text messages, work schedules | 518 |
| Wyatt | 3/24/2014 | 1.62 | Review of files on check stubs, employment history and threats | 482 |
| Ramirez | 3/24/2014 | 3.1 | Review of files on check stubs, employment history, threats | 521 |
| Wyatt | 5/1/2014 | 3 | Receipt and review of JIB list of employees | 483 |
| Ramirez | 5/1/2014 | 3 | Receipt and review of JIB list of employees | 522 |
| Wyatt | 5/2/2014 | 6.5 | TCs and research for new phone number and/or addresses of JIB list of returned addresses for employees | 483 |
| Ramirez | 5/2/2014 | 6 | TC with JIB list of returned addresses | 522 |
| Wyatt | 5/3/2014 | 6 | TCs and research for new phone number and/or addresses of JIB list of returned addresses for employees | 483 |
| Ramirez | 5/3/2014 | 6.75 | TC with JIB list of returned addresses | 522 |
| Wyatt | 5/4/2014 | 3.4 | TCs and research for new phone number and/or addresses of JIB list of returned addresses for employees | 483 |
| Ramirez | 5/4/2014 | 4.2 | TC with JIB list of returned addresses | 522 |
| Wyatt | 5/20/2014 | 1 | Receipt and review of check stubs and other documentation - Bonilla | 484 |
| Ramirez | 5/20/2014 | 1 | Receipt and review of check stubs and other documentation - Bonilla | 522 |
| Wyatt | 5/22/2014 | 0.5 | Receipt and review of Barraza Affidavit | 484 |
| Ramirez | 5/22/2014 | 0.5 | Receipt and review of Barraza Affidavit | 523 |
| Wyatt | 8/28/2014 | 1.55 | Receipt and review of ficititious paycheck stubs Gallegos; consultation w Toni re same | 485 |
| Ramirez | 8/28/2014 | 1.55 | Receipt and review of fictitious paycheck stubs Gallegos; consultation with Paula re same | 523 |
| Wyatt | 8/28/2014 | 1.65 | Receipt and review of ficititious paycheck stubs Perez; consultation w Toni re same | 485 |
| Ramirez | 8/28/2014 | 1.65 | Receipt and review of fictitious paycheck stubs Perez; consultation with Paula re same | 523 |
| Wyatt | 8/28/2014 | 1.55 | Receipt and review of ficititious paycheck stubs Jimenez; consultation w Toni re same | 485 |

| Ramirez | 8/28/2014 | 1.55 | Receipt and review of fictitious paycheck stubs Perez; consultation with Paula re same | |
| Wyatt | 4/6/2015 | 0.5 | Receipt and review of Income Tax Returns for DeAnda | 491 |
| Ramirez | 4/6/2015 | 0.25 | Receipt and review of Income Tax Returns for DeAnda | 533 |
| Wyatt | 6/20/2015 | 4.25 | Review of Defendant Documents in preparation of Longoria deposition | 494 |
| Ramirez | 6/20/2015 | 2.85 | Review of Defendant Documents in preparation of Odeh and Longoria deposition | 536 |
| Wyatt | 6/27/2015 | 3 | Sort Defendant Production of Documents with Toni in preparation of defendants depositions | 496 |
| Ramirez | 6/27/2015 | 3 | Sort Defendant Production of Documents with Paula in preparation of defendants deposition | |

From the face of it, and as noted by Defendants, many of these "identical time entries . . . extend[] well beyond matters that may have involved translation." Doc. 144, Defs.' Sur-Reply 5. Nor can the Court fathom why duplication of effort would otherwise have been necessary. For those reasons, cuts are in line on this point.

The Court now turns to Defendants' second argument that Plaintiffs' translation costs are not properly taxed to Defendants. The Court disagrees. As an initial matter, "translation costs" is not a misnomer—the expenses in question are more appropriately dealt with as costs than attorneys' fees. *See Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133 (5th Cir. 1983). In that context, "[t]he proper standard for the award of translation costs [is] . . . whether they were necessarily incurred." *Id.* In other words, translation costs are not off-limits provided they are reasonable.

Here, however, Plaintiffs lumped translation costs together with attorneys' fees because paralegals such as Ramirez did the translating. *See* Doc. 138, Pls.' Reply 4, 14–15. Defendants contend that translation work, categorically, is not legal work and therefore hours spent doing it

should not be recoverable as attorneys' fees. Doc. 144, Defs.' Sur-Reply 5 (citing *Zhang*, 2015 WL 5122530, at *3). The Court declines to draw such a hard line—sometimes translation does require legal work. Some documents that need translation are protected by the attorney-client privilege, "and obtaining appropriate assurances of confidentiality" from translators requires "decision-making that non-legal staff are not qualified to make." *Garcia v. R.J.B. Props., Inc.*, 756 F. Supp. 2d 911, 918 (N.D. Ill. 2010). So Plaintiffs can recover for reasonable translation costs.

But as made clear by the billing snapshot above, the number of hours Plaintiffs chalk up to translation costs goes beyond reason. The Court therefore concludes that substantial reductions on this point are due.

### 2.     Excessive fact gathering and Plaintiff teleconferences

Defendants next argue that "[w]hile speaking with clients for fact gathering and case matters is reasonable, the extent to which it occurred here is not." Doc. 134, Defs.' Resp. 15. Specifically, they point to the fact that Wyatt, Ramirez, and Rivera billed for hundreds of hours' worth of teleconferences—some of which describe the topic or purpose of the conference, some of which do not. *See id.* The total of these conferences, however, was "not reasonably necessary" in Defendants' estimation. *Id.*

Plaintiffs defend Wyatt, Ramirez, and Rivera's teleconferences by reiterating that Ramirez had to translate for Wyatt, given most plaintiffs spoke only Spanish, and that both needed to explain the legal process at length because these plaintiffs were unsophisticated litigants. Doc. 138, Pls.' Reply 14. Nevertheless, Plaintiffs agreed to reduce Wyatt's lodestar by another 10% and Ramirez's by another 15%. *See id.* at 14–15.

But Plaintiffs did not much defend Rivera's participation on the phone calls. Instead, they

reduced her lodestar by an hour as part of the "handful of errors" they acknowledged. *Id.* at 11. Plaintiffs explained that Rivera participated because she was "instrumental in translation services." *Id.* Yet the crux of Ramirez's participation was translation, too. So that explanation is flimsy. The Court agrees with Defendants that the extent of Plaintiffs' conferences was not reasonably necessary.

### 3.    Excessive declarations

Defendants next attack Plaintiffs' allegedly excessive billing in preparing declarations in support of various motions. Doc. 134, Defs.' Resp. 15–16. In particular, Defendants argue that Plaintiffs used six attorneys and two paralegals to draft 14 extremely similar documents, billing 304 hours in the process. *Id.* In other words, Plaintiffs used eight timekeepers to bill 21.7 hours each to complete multiple four to five page documents that closely resemble each other—and that, Defendants claim, is excessive. *Id.* at 16 (citing Doc. 135, Defs.' Resp. App. 1732, 1813, 1821).

Plaintiffs fail to respond directly to this point; rather, they generally defend the amount of attorney, and especially associate, work done in pursuing the case based on "employment dates and availability of the attorneys." Doc. 138, Pls.' Reply 8. That response, however, does not explain why so much time was needed to prepare such similar declarations, which in some instances varied "only as to items such as the store number worked at, the number of overtime hours worked, and the alternate names allegedly used." Doc. 134, Defs.' Resp. 15–16 (citing Doc. 135, Defs.' Resp. App. 1813, 1821).

The Court recognizes that no matter how similar the declarations were, Plaintiffs had to work to get the information they contained. That said, the Court agrees with Defendants that 304 hours is excessive for what, by all appearances, boiled down to filling in a template.

4.      Excessive discovery responses

Defendants also challenge Plaintiffs' responses to discovery requests as excessive. Doc. 134, Defs.' Resp. 16–17. More specifically, Defendants claim that the 630 hours Plaintiffs' counsel spent drafting mostly identical responses to mostly identical requests was unreasonable. *Id.* As with the declarations, Plaintiffs do not directly respond to this challenge. *See* Doc. 138, Pls.' Reply 8.

Defendants provided some 500 pages of redlined discovery responses in their appendix. *See* Doc. 135, Defs.' Resp. App. 631–1147. And they are, as Defendants note, teeming with identical or nearly identical answers. *See* Doc. 134, Defs.' Resp. 16 n.3 (identifying particularly redundant entries). In some instances, Plaintiffs' responses "vary only as to dates and location of employment, hours worked, and alternate names used." *Id.* at 16 (citing Doc. 135, Defs.' Resp. App. 1140–47). In other words, not much.

Again, the Court recognizes that some degree of repetition is to be expected in a case like this—Plaintiffs need not reinvent the wheel with every discovery response. But in the same vein, the Court finds it hard to believe that it took 630 hours to produce such similar answers, even factoring in that there were over 500 pages' worth of them. On that basis, the Court agrees with Defendants that Plaintiffs' discovery responses were excessive.

5.      Excessive depositions

Defendants also argue that Plaintiffs' counsel spent an excessive amount of time—roughly 1,155 hours—defending Plaintiffs against Defendants' 30-odd depositions, each of which usually lasted two to four hours. Doc. 134, Defs.' Resp. 17–19 (citing Doc. 135, Defs.' Resp. App. 1557–1622, 1757–69). Defendants, for example, point to one deposition where two senior partners, one associate, and three paralegals together spent roughly 38 hours preparing for a deposition that

lasted about three-and-a-half hours. *Id.* Once more, Plaintiffs do not squarely respond to this challenge; rather, they provide general justifications for associate-level staffing and stress the need for bilingual paralegals to communicate with their Spanish-speaking clients. *See* Doc. 138, Pls.' Reply 8–14.

The Court can conceive where that might increase billing and produce some duplicative efforts. The amount present here, though, is too much. Simply put, Plaintiffs needed to show more to convince the Court that 38 hours of prep time per deposition billed by multiple attorneys and paralegals was reasonable for a series of relatively similar and short depositions. *See Carney v. IBEW Local Union 98 Pension Fund*, 66 Fed. App'x 381, 387–88 (3d Cir. 2003) (finding 25 hours of attorney prep time per deposition excessive for depositions that "concerned identical subject matter, all occurred within a six-week period, and each only lasted between five and seven hours"); *see also Coleman v. Houst. Ind. Sch. Dist.*, 202 F.3d 264, 1999 WL 1131554, at *6–7 (5th Cir. 1999) (same for hours law clerk "spent attending, rather than participating in, or conducting depositions"); *Honestech, Inc. v. Sonic Sol.*, 725 F. Supp. 2d 573, 587–88 (W.D. Tex. 2010) (same for 10 hours attorney spent preparing for a three-hour deposition; court determined six was reasonable). So reductions on this point are warranted.

### 6.    Excessive damage calculations

Defendants dispute the roughly 850 hours Plaintiffs' counsel spent calculating damages on two fronts. Doc. 134, Defs.' Resp. 19–20. First, Defendants assert that, instead of dividing labor between them, Plaintiffs' attorneys from Baron & Budd and the Wyatt Law Firm duplicated their efforts by making the same calculations twice. *Id.* at 19. Second, Defendants continue, the time spent making calculations was excessive because the calculations were based on Plaintiffs' estimates of

unpaid overtime, which mainly consisted of each Plaintiff's own estimate of hours worked as recorded in his or her deposition. *Id.* at 19–20. In other words, the meat of those calculations came from estimates Plaintiffs themselves produced through no calculation at all. *Id.*

Plaintiffs respond to this point. Doc. 138, Pls.' Reply 13–14. Specifically, Plaintiffs argue that Defendants' foot dragging in stipulating damages caused Plaintiffs to spend a large amount of time trying to make sense of "payroll and other documents produced for each Plaintiff [because] those documents were the sole method of proving damages." *Id.* Put another way, Plaintiffs say, "[i]t was Defendants' own employment scheme [that] resulted in the time it took to sort out the case, not some act of Plaintiffs to duplicate work." *Id.* at 14.

Yet Defendants counter that they unraveled for Plaintiffs any complexity that scheme might have entailed more than two years ago when Defendant Odeh explained that, "given that some Plaintiffs shared alternate names, the only way you can really cut the checks, because there's no accurate way to do it, is to assign percentages of the overtime premium owed." Doc. 144, Defs.' Sur-Reply 6 (internal quotation marks and citations omitted).

After reviewing the records provided by both sides, the Court determines that the damages calculations were not as elementary as Defendants suggest: Plaintiffs undertook a not-insubstantial amount of work before the stipulated amount was agreed on. The Court therefore refuses to slash Plaintiffs' hours on this front to the extent Defendants request. That said, the damages in this case were nowhere near as labyrinthine as Plaintiffs contend. And even if they were, the redundant hours spent by both Baron & Budd and the Wyatt Law Firm were uncalled for.

The Court recognizes that, with respect to hours billed for damages calculations, Plaintiffs have already made a 50% across the board reduction for billing judgment, plus another 10% for

Plaintiffs that were dismissed. Doc. 138, Pls.' Reply 14. Plaintiffs also point out that they wrote off work done by an accountant and two paralegals. Yet the Court still finds that additional reductions are in order.

### 7.   Excessive document review

Defendants next urge that the 533 hours Plaintiffs' counsel spent reviewing some ten-thousand documents—which mostly consisted of personnel files, paycheck records, and timekeeping records for each Plaintiff—was excessive. Doc. 134, Defs.' Resp. 20–21. Defendants object on three[8] specific grounds. *Id.* First, the document review duplicated work billed for the damages analysis. *Id.* Second, and as set forth in their challenge to damages, such extensive review of time and payroll records was unnecessary because each Plaintiff's estimate of his or her overtime hours controlled. *Id.* And third, Baron & Budd and the Wyatt Law Firm failed to divide labor and, as a result, duplicated each other's efforts. *Id.*

Here too, Plaintiffs reply in a general way that focuses on associate-level staffing and the need for bilingual paralegals to communicate with their Spanish-speaking clients. *See* Doc. 138, Pls.' Reply 8–14. But in this context, that is enough. Because at its core, Defendants' argument is that spending roughly three minutes on average to review a document is excessive. The Court is not persuaded and—given the reductions both it and Plaintiffs have already made for damages calculations—will not adjust Plaintiffs' amended lodestar on this point.

### 8.   Excessive mediation

Defendants also challenge Plaintiffs' billing for mediation. Doc. 134, Defs.' Resp. 21–22. The

---

[8]Defendants actually object on four grounds, but the fourth is addressed below in Section III.A.1.i.a.9. *See* Doc. 134, Defs.' Resp. 20–21.

parties, Defendants note, participated in two single-day mediations. *Id.* Yet Plaintiffs' counsel billed about 370 hours for mediation preparation. *Id.* That, Defendants claim, is excessive and the result of overstaffing and overattendance by both Baron & Budd and the Wyatt Law Firm. *Id.* The figure is even more extreme, Defendants say, when considered with the amount of time Plaintiffs' counsel spent calculating damages beforehand. *Id.*

Again, Plaintiffs' response is a generic defense of their counsel's staffing decisions. *See* Doc. 138, Pls.' Reply 8–14. A more pointed retort was needed to explain why roughly 370 hours of preparation—148.97 for the first mediation, 221.67 for the second—was needed. *See, e.g., Lewis v. Hurst Orthodontics, PA*, 292 F. Supp. 2d 908, 910 (W.D. Tex. 2003) (finding 36.1 hours combined preparation between two attorneys excessive for one day of single-party FLSA mediation). Assuming that the parties mediated for eight hours in each of the full-day mediations, that equates to more than 23 hours of prep time for each hour of mediation. The Court agrees with Defendants; that is too much. *See, e.g., Quinn v. Ultimo Ent., Ltd.*, No. 99 C 7268, 2001 WL 128242, at *4 (N.D. Ill. Feb. 9, 2001) ("The mediation between the two parties took one day, as a result it is difficult for this court to believe that a single day mediation required 58.75 hours for preparation. This court holds that 10 hours of preparation is certainly sufficient for this case.").

### 9.    Duplicative work from Wyatt & Ramirez

Defendants' next point of contention is the extent of duplicative work done by Wyatt and Ramirez. Doc. 134, Defs.' Resp. 22. Defendants already challenged this duplication above specifically in relation to redundant intake work; the challenge here is more general. Plaintiffs' explanation, however, is the same: nearly all of the Plaintiffs spoke only Spanish. *See* Doc. 138, Pls.' Reply 1, 4, 14–15. Wyatt did not speak Spanish but Ramirez did, so both were needed. *Id.*

The Court agrees with Defendants for the same reasons it did above. *See supra* Section III.A.1.i.a.1. Some duplication from Wyatt and Ramirez is expected. The degree here, however, is unreasonable. For that reason, reductions to Plaintiffs' amended lodestar on this front are necessary.

10.    Duplicative entries from individual timekeeper

Defendants next argue that Plaintiffs' records contain a number of one-off duplicative double-entries from multiple timekeepers. Doc. 134, Defs.' Resp. 22–23 (citing Doc. 135, Defs.' Resp. App. 2335–505). Plaintiffs concede "that a handful of errors" slipped through the cracks. *See* Doc. 138, Pls.' Reply 11–16. But those errors, Plaintiffs continue, were corrected in Plaintiffs' amended lodestar by individual reductions and percentage decreases for billing judgment. *Id.* Defendants retort that Plaintiffs' cuts where not enough to make up for the degree of duplicative entries identified in Plaintiffs' records. Doc. 144, Defs.' Sur-Reply 2. The Court agrees with Defendants.

Plaintiffs, to their credit, did identify a number of errors and subtracted those duplicative hours from their billing records. But those cuts were not enough. For example, Plaintiffs did not reduce any hours billed by Allen Vaught of Baron & Budd despite entries such as:

| | | | | |
|---|---|---|---|---|
| Vaught | 7/9/2015 | 1.3 | Prep for and attend case strategy conference re remaining depo schedules | 244 |
| Vaught | 7/9/2015 | 0.2 | Case strategy conference | 244 |

The same goes for Melinda Arbuckle of Baron & Budd. Except for the general write-down for billing judgment and the dismissed Plaintiffs reflected in Plaintiffs' amended lodestar, her hours were unchanged. Yet they included duplicative entries such as:

| | | | | |
|---|---|---|---|---|
| Arbuckle | 9/11/2015 | 0.3 | Case strategy conference | 378 |
| Arbuckle | 9/11/2015 | 0.3 | Case strategy conference | 378 |

The hours for the paralegal Rivera are not much better. Her billing was among the "handful of errors" Plaintiffs identified. Doc. 138, Pls.' Reply 11. They cut one hour in response. *Id.* The Court

- 20 -

finds more would have been appropriate given the number of billing issues Defendants identified. For example:

| | | | | |
|---|---|---|---|---|
| Rivera | 7/22/2013 | 0.5 | Consent revision Susana Martinez | 397 |
| Rivera | 7/22/2013 | 0.5 | Consent to be plaintiff rev. & sign Susana Martinez | 397 |
| Rivera | 2/4/2014 | 0.3 | Review tax returns 2011 Victoria Hernandez | 399 |
| Rivera | 2/4/2014 | 0.3 | Review tax returns Victoria Hernandez | 399 |
| Rivera | 6/22/2015 | 0.2 | Email from Toni re Hilda Amador | 409 |
| Rivera | 6/22/2015 | 0.2 | Email from Toni re Hilda Amador depo | 409 |
| Rivera | 7/21/2015 | 0.2 | Email from Toni review Betancourt Supp. | 411 |
| Rivera | 7/21/2015 | 0.3 | Email from Toni re Yaimys Betancourt | 411 |

These are, admittedly, small fries. But they are just a representative sample of the numerous problems Defendants identify in nearly two-hundred pages of challenged billing records. *See* Doc. 134, Defs.' Resp. 22–23 (citing Doc. 135, Defs.' Resp. App. 2335–505). The smattering of hours that Plaintiffs cut to solve those problems, even together with the percentage reductions found in their amended lodestar, does not go far enough. The Court therefore concludes that additional reductions on this point are warranted.

b.      Questionable time entries

Defendants' biggest complaint, by far, rests in a slew of entries that they allege are "excessive, questionable, and in some cases, simply unbelievable." Doc. 134, Defs.' Resp. 23. Defendants identify the flagged billing entries in a series of bullet points spanning nine pages. *Id.* at 23–31. They are too numerous to address individually, but here are some highlights: (1) multiple timekeepers billing more than 24-hours in a single day; (2) billing to review documents before they were produced to Plaintiffs; (3) billing to review documents that were never produced to Plaintiffs; (4) billing for deposition preparation after the depositions were held; (5) billing for work on discovery responses after the

responses were served; (6) billing for work on matters not related to this case; and (7) billing excessively for obtaining signatures on one-page documents. *See id.*

Plaintiffs, for their part, mainly echo their answer to Defendants' critique of duplicative billing entries: There were a handful of errors that were corrected and the amended lodestar makes additional cuts for billing judgment and the dismissed Plaintiffs. *See* Doc. 138, Pls.' Reply 10–16. As to the Wyatt Law Firm, however, they also respond in detail to a few of Defendants' contentions. *Id.* at 12–16. For instance, Plaintiffs say that instead of wastefully reviewing unproduced or untimely documents, their counsel was forced to comb through huge swaths of records for each Plaintiff because the Plaintiffs shared false names so it was unclear what applied to whom. *Id.* at 12–13. And, according to Plaintiffs, the associate who billed more than 46 hours in a day just mistakenly block-billed a few days' worth of work into a single day. *Id.* at 15.

Defendants disagree with those explanations. Doc. 144, Defs.' Sur-Reply 3–4. The Court, however, finds that Plaintiffs bring up some valid points. The false name scheme would make discovery difficult, especially given Plaintiffs' name sharing, and attorneys sometimes block-bill for chunks of work. Yet that does not account for the other discrepancies that Defendants note. Nor do the general response and reduction in Plaintiffs' amended lodestar.

For example, Defendants point out that the paralegal Rivera billed 26.8 hours in a day. Doc. 134, Defs.' Resp. 23 (citing Doc. 124, Pls.' App. 538). Putting aside the fact that Plaintiffs did not respond to that argument, perhaps it too could be chalked up to block billing. But as Defendants note, Rivera billed 15.8 hours the day before and 9.9 hours the day after, not to mention 14.05 hours two days before and 11.45 hours two days after. *Id.* The Court finds that hard to believe. Or consider Nora Lopez and Aundria Martinez, paralegals at the Wyatt Law Firm. Both billed to prepare for

depositions—Lopez six and Martinez five—months after they had taken place. *See* Doc. 134, Defs.' Resp. 26–27.

To be clear, the Court does not harp on these examples, or for that matter any others provided here, because they are major missteps. It just mentions them as representative illustrations of the deficiencies that Defendants so thoroughly catalogue in their briefing. The Court recognizes that Plaintiffs have addressed some of those problems. But after considering all of the errors identified in this section of their briefing, the Court agrees with Defendants that Plaintiffs' billing included a number of excessive and questionable time entries that merit reduction.

c.       Vagueness and incompleteness of time records

Defendants also attack Plaintiffs' billing records as vague and incomplete, arguing that "[f]or many billing entries, there is no way to determine what was being done, whether the work was legal in nature, or why it was necessary for the case." Doc. 134, Defs.' Resp. 32. More specifically, Defendants target Plaintiffs': (1) numerous entries for damages calculations, arguing that the sheer volume renders each entry vague as to what work was actually being done; (2) entries generically labeled for work done on document or file review; and (3) entries generically described as "TC" (telephone call) with a given Plaintiff. *Id.* (citing Doc. 135, Defs.' Resp. App. 1750, 2164). Plaintiffs respond that any vagueness present in their billing was either done to protect attorney-client privilege or read out of context. Doc. 138, Pls.' Reply 10–11. When read in context, Plaintiffs go on, generic entries for document or file review were obviously a part of ongoing projects, and "the necessity of that work is clear from nearby billing entries." *Id.*

Defendants maintain that those explanations are inadequate. Doc. 144, Defs.' Sur-Reply 6. Yet the Court agrees with Plaintiffs on the points they raised. *See Olibas v. Native Oilfield Servs., LLC,*

104 F. Supp. 3d 791, 811 (N.D. Tex. 2015) ("In fact, even the least descriptive entries that Defendants focus on, such as 'prep for MSJ' and 'Pretrial Matters,' can be examined for their reasonableness based on the number of hours spent on such tasks, the more detailed entries surrounding them, and their dates of entry, which indicates the point in the proceedings in which the particular services were rendered."), *aff'd*, 838 F.3d 442 (5th Cir. 2016). That said, Plaintiffs do not speak to Defendants' last point on vague entries for telephone calls.

Defendants' position in this regard is persuasive. Most of Plaintiffs' billing entries for telephone calls are clear, but many are not. For example:

| Rivera | 8/2/2013 | 4.5 | TC Toni re case, TC's various clients, review files | 398 |
|--------|----------|-----|-----------------------------------------------------|-----|
| Rivera | 8/15/2013 | 2.5 | TC various clients re case status, revision of files | 398 |
| Rivera | 10/8/2013 | 0.5 | TC Yenssi Sandoval | 398 |
| Rivera | 2/25/2014 | 0.5 | TC Juanito Quiroz | 399 |
| Rivera | 3/11/2014 | 1.0 | TC Bretado | 400 |
| Rivera | 4/12/2014 | 0.3 | TC Alejandra Cruz | 400 |
| Rivera | 4/22/2014 | 3.5 | TC's to various clients, file revision | 402 |
| Rivera | 4/30/2014 | 3.5 | TC various clients file revision | 402 |

Unlike the generic document review entries mentioned before, there are no hints or context clues to shed light on what entries like the ones above entailed. *See, e.g.*, Doc. 124, Pls.' App. 398–402. So Plaintiffs needed to provide more to show that those hours were reasonable. *See Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 865 (S.D. Tex. 2011) (finding billing entries sufficiently clear when "counsel standardly and adequately identif[ied] the particular legal issue, document, purpose of telephone calls and conferences, or service for which they are billing"). They did not. Thus, the Court concludes that additional reductions on this point are in line. *See Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-0752-D, 2011 WL 487754, at *7 (N.D. Tex. Feb. 11, 2011) ("Likewise, in this case, the court applies a reduction to reflect the number of

descriptions that merely state 'tel. conf.' or 'conf.,' without specifically referring somewhere in the entry to a court document, proceeding, or some other indication of subject matter.").

d.      Number billing entries for clerical work

Defendants' next challenge Plaintiffs' numerous billing entries for allegedly clerical work. Doc. 134, Defs.' Resp. 33–34. Clerical work, Defendants posit, is not recoverable. *Id.* And Plaintiffs' counsel, both attorneys and paralegals, billed for mountains of it. *Id.* Defendants summarize those clerical entries over 200 some-odd pages in their appendix. *See* Doc. 135, Defs.' Resp. App. 1993–2163. They range from assistants organizing documents and assembling binders to paralegals calendaring deadlines and ordering transcripts to attorneys looking up addresses. Doc. 134, Defs.' Resp. 32–33.

Plaintiffs sounded a one-note response to that critique: cutting all 231 hours billed by their accountant Jenna Roy. *See* Doc. 138, Pls.' Reply 16. But the Court finds addressing just one timekeeper was not enough. While assistants may do such tasks, clerical work performed by attorneys and paralegals "is not recoverable in an award of attorneys' fees." *Black v. SettlePou, P.C.*, No. 3:10-cv-1418-K, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014) (citing *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) ("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical.")). The Court therefore concludes that additional cuts for clerical work performed by Plaintiffs' attorneys and paralegals is warranted. *See Barrow v. Greenville Ind. Sch. Dist.*, No. 3:00-cv-0913-D, 2005 WL 6789456, at *12 (N.D. Tex. Dec. 20, 2005) (subtracting hours for attorney's clerical work), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).

e.      Figuring in travel time

Defendants' second-to-last challenge is to Plaintiffs' counsel billing for travel time. Doc. 134,

Defs.' Resp. 34–35. Plaintiffs' counsel from the Wyatt Law Firm was based out of San Antonio. Defendants argue that travel time from there should not be recoverable because: (1) the case turned on facts localized in the Dallas-area; (2) the Wyatt Law Firm does not specialize in FLSA-type litigation; and (3) Plaintiffs already had attorneys in Dallas with Baron & Budd. *Id.* Plaintiffs provide no argument to the contrary.

"The Fifth Circuit has not addressed whether travel time may be properly awarded as part of attorneys' fees under the FLSA. But courts in the Fifth Circuit have held in other contexts that a court has discretion to reduce hours billed to travel time in calculating a fee award." *Hilton v. Exec. Self Storage Assocs., Inc.*, No. H-06-2744, 2009 WL 1750121, at *12 (S.D. Tex. June 18, 2009) (citing *In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008) (evaluating Fifth Circuit precedent from various types of cases and concluding as a general rule that "it is not an abuse of discretion to discount non-working (and even working) travel time")). With that in mind, here are a few of Plaintiffs' billing entries:

| | | | | |
|---|---|---|---|---|
| Ramirez | 7/22/2013 | 2.1 | Travel back to San Antonio from Dallas | 515 |
| Ramirez | 9/22/2013 | 2.1 | Travel to Dallas for meeting with various clients | 518 |
| Ramirez | 9/22/2013 | 2.1 | Travel back to San Antonio | 518 |
| Ramirez | 4/29/2014 | 2.1 | Travel to Dallas to visit with clients | 522 |
| Ramirez | 4/29/2014 | 2.1 | Travel back from Dallas | 522 |
| Wyatt | 6/29/2013 | 2.1 | Travel to Dallas to meet with Quiroz, Aguayo and other potential clients re discrimination and unpaid wages by Odeh | 477 |
| Wyatt | 6/29/2013 | 2.1 | Travel back to San Antonio after meeting | 477 |
| Wyatt | 9/22/2013 | 2.1 | Travel to Dallas for meeting with Elizabeth Quiroz; work on affidavit | 480 |
| Wyatt | 9/22/2013 | 2.1 | Travel back from Dallas to San Antonio | 480 |
| Wyatt | 4/29/2014 | 4.2 | Travel to and from Dallas to visit with clients | 483 |

"It is unclear from [the vast majority of] the billing records whether any work was done while in transit, though it was [P]laintiffs' burden to demonstrate as much." *Alex v. KHG of San Antonio,*

*LLC*, 125 F. Supp. 3d 619, 627 (S.D. Tex. 2015). For that reason, the Court agrees with Defendants that Plaintiffs' amended lodestar should be reduced to account for hours billed for travel time.

> f.      Hours recorded for seeking attorneys' fees

Defendants' final argument is that hours recorded for seeking attorneys' fees are not recoverable. Doc. 134, Defs.' Resp. 35–36. Plaintiffs argue to the contrary. Doc. 138, Pls.' Resp. 9–10. The Court agrees with Plaintiffs.

For starters, "[t]he compensability of time spent litigating attorneys' fee claims is well-established in this circuit." *Merrick v. Scott*, No. 3:10-cv-2172-D, 2011 WL 1938188, at *8 (N.D. Tex. May 20, 2011) (citing *Johnson v. Miss.*, 606 F.2d 635, 638 (5th Cir. 1979); *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985)). Defendants, however, argue that their Second Amended Offer of Judgment provides otherwise in this case. Doc. 134, Defs.' Resp. 35–36. It states:

> Defendants further offer to allow judgment to be taken against them collectively for an additional amount to be determined by the Court for reasonable attorney's fees available under the claims asserted and, in addition, court costs incurred by Plaintiffs as of the date [October 27, 2015] of this offer.

Doc. 135, Defs.' Resp. App. 627–30. Plaintiffs interpret the clause as limiting costs but not attorneys' fees to the date of the offer. Doc. 123, Pls.' Br. 12–13. In other words, costs stopped accruing on October 27, 2015, but attorneys' fees did not. *Id.* And on that basis, Plaintiffs seek attorneys' fees for work done after the offer date (*i.e.*, attorneys' fees for work done trying to collect attorneys' fees). *Id.* Defendants, by contrast, read the clause as a temporal limit on both. Thus, they argue, attorneys' fees and costs should be capped at whatever amount that had accrued as of October 27, 2015. Doc. 134, Defs.' Resp. 35–36.

Defendants' position is unpersuasive. "Courts apply general contract principles to interpret

Rule 68 offers of judgment. If the underlying statute defines 'costs' to include attorneys' fees, such fees are included as costs for purposes of Rule 68." *Torres v. Empire Envtl. Grp., LLC*, No. 3:13-cv-0723-G(BN), 2013 WL 6231400, at *5 (N.D. Tex. Dec. 2, 2013) (citing *Marek v. Chesny*, 473 U.S. 1, 9 (1985); *Basha v. Mitsubishi Motor Credit of Am., Inc.*, 336 F.3d 451, 453 (5th Cir. 2003)). Section 1981 includes attorneys' fees with costs. *See* 42 U.S.C. § 1988(b). But the FLSA does not. *See* 29 U.S.C. § 216(b). So there are two line items in Defendants' Second Amended Offer of Judgment: costs and FLSA attorneys' fees. *See Torres*, 2013 WL 6231400, at *5 ("For attorneys' fees to be covered by the offer of judgment, therefore, the fees must have been explicitly included in the terms of the offer of judgment—which they were.").

   Just looking at the Second Amended Offer of Judgment's terms, it is clear that costs are limited to the date of the offer. Doc. 135, Defs.' Resp. App. 628 ("[C]ourt costs incurred by Plaintiffs as of the date of this offer."). But to achieve the same result as to Plaintiffs' FLSA attorneys' fees, Defendants needed to explicitly limit the fee award to fees incurred before the date of the offer. *See* 12 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3005.1 (3d ed. 1998). They did not.

   Explicit limits on fees to those incurred before the date of the offer are just that: explicit. *See Guerrero v. Cummings*, 70 F.3d 1111, 1112–14 (9th Cir. 1995) (affirming trial court's limitation on attorneys' fees to date of Rule 68 offer of judgment when offer stated "plus reasonable attorney fees and costs *incurred by this plaintiff prior to the date of this offer* in an amount to be set by the court") (emphasis added). Yet Defendants' language—"reasonable attorney's fees available under the claims asserted and, in addition, court costs incurred by Plaintiffs as of the date of this offer"—is fuzzy at best. *See* Doc. 135, Defs.' Resp. App. 627–30; *Holland v. Roeser*, 37 F.3d 501, 502–04 (9th Cir. 1994)

(ruling that Plaintiffs could recover post-offer attorneys' fees when Rule 68 offer stated: "costs now accrued and reasonable attorney fees as determined by the court"); *Torres*, 2013 WL 6231400, at *5 (same when offer stated: "all costs then accrued and reasonable attorneys' fees as determined by the Court"). For that reason, Plaintiffs can recover for reasonable FLSA attorneys' fees incurred after the offer of judgment was made.

Plaintiffs' amended lodestar already discounts their post-offer attorneys' fees by 50% from what was billed. *See* Docs. 123, Pls.' Br. 12–13; 138, Pls.' Reply 9–10. And based on the above analysis, the Court sees no reason for further reductions. Accordingly, the Court will not adjust Plaintiffs' amended lodestar on this point.

### g.    Conclusion

At bottom, the Court must determine whether the roughly 4,500[9] hours billed by Plaintiffs' counsel—as compared to less than 2,300 by Defendants' attorneys—is reasonable. *Compare* Doc. 139, Pls.' Reply App. 568, Ex. 1, Amended Master Lodestar Spreadsheet *with* Doc. 144, Defs.' Sur-Reply 1. It is not. After considering Plaintiffs' justifications and Defendants' attacks on them, the Court concludes that the number of hours billed was unreasonably high. The hours expended were excessive, duplicative, and, in some instances, documented too vaguely. *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Defendants, for their part, meticulously catalogued Plaintiffs' billing issues and presented them to the Court in their briefing. As a result, an across-the-board reduction is appropriate. *See Major v. Treen*, 700 F. Supp. 1422, 1429 (E.D. La. 1988) (explaining that "in no instance has an

---

[9]4,500 is the net figure calculated in the lodestar above. The actual number was 6,934.8. *See* Doc. 139, Pls.' Reply App. 568, Ex. 1, Amended Lodestar Spreadsheet.

across-the-board reduction of half of documented hours without explanation and without specific fact finding been approved"). The Court therefore reduces the hours billed by Plaintiffs' counsel by an additional 35%. *See Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 783 (S.D. Tex. 2007) (applying 30% across-the-board reduction in employment discrimination case).

    *ii. Reasonable rates*

The Court now turns to the second step in its lodestar analysis: determining the reasonableness of Plaintiffs' counsel's rates. *See Combs*, 829 F.3d at 391–92. "Reasonable hourly rates are determined by looking to the prevailing market rates in the community in which the district court sits." *Watkins*, 531 F. Supp. 2d at 783–84 (citing *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). Plaintiffs bear the burden of establishing that their proposed rates are reasonable in the Dallas market. *Id.*

The Court has already determined reasonable rates for many of the timekeepers at issue here in another recent FLSA case. *See Olibas*, 104 F. Supp. 3d at 810–11. In particular, the Court found that $700 for Budd, $400 for Vaught, between $300 and $325 for associates, $75 for paralegals, and $45 for assistants was reasonable.

Defendants contend that the Court's conclusions in *Olibas* should not apply because, unlike here, the Defendants in that case did not challenge the proposed rates. *See* Doc. 144, Defs.' Sur-Reply 9. Instead, Defendants continue, the Court should adjust Plaintiffs' proposed rates down in accordance with the median rate for similar work in Dallas, which Defendants say is $273 for attorneys and around $100 for paralegals. Doc. 134, Defs.' Resp. 36–41. Defendants also point to another of the Court's decisions that found $350 for partner-level attorneys to be reasonable in a FLSA case. *Id.* (citing *Pineda v. JTCH Apartments, LLC*, 126 F. Supp. 3d 797, 803–04 (N.D. Tex.

2015)). Plaintiffs, on the other hand, ask the Court to increase the rates it found reasonable for many of its timekeepers just last year to account for changing times and the difficulty of the case. Doc. 138, Pls.' Reply 16–20.

After reviewing each side's arguments, supporting documentation, and proposed rates, the Court sees no reason to alter its conclusions in *Olibas*. Defendants are right that the defendants in that case did not challenge the proposed rates. *See Olibas*, 104 F. Supp. at 810–11. The Court, however, still reflected on whether they were reasonable—so Defendants' argument misses the mark. *Id.* at 810 (emphasis added) ("In response, Defendants do not dispute the reasonableness of the fees requested for Plaintiffs' paralegals and administrative assistant, which the Court finds no reason to further question itself. Nor do Defendants challenge the reasonableness of the hourly rates claimed by each of Plaintiffs' attorneys, *which the Court finds to be reasonable based on the declarations submitted in support*.").

Plaintiffs' argument is similarly lacking: Not so much has changed since the Court's earlier decision to warrant rate hikes. The Court therefore concludes that the rates from *Olibas* control where applicable and guide as to new timekeepers. *See Olibas*, 104 F. Supp. at 810. Those rates fall between the $267 and $350 rates proposed by Defendants for attorneys for all but three timekeepers: Budd, Vaught, and Wyatt. The Court finds that they, as either senior level or named partners, merit higher rates, $700 and $400 respectively. As to paralegals, the $75 rate set forth in *Olibas* is generally appropriate.

With regard to Plaintiffs' bilingual paralegals, the Court agrees with Defendants that $210 is high. Plaintiffs cite to no authority to support their proposed rate. *See* Doc. 38, Pls.' Reply. 19–20. Defendants argue that $100 is a more appropriate rate. Doc. 134, Defs.' Resp. 39–40. The Court

recently determined that reasonable rates for paralegals range between $60 and $125 per hour. *Spear Mktg., Inc. v. Bancorpsouth Bank*, No. 3:12-cv-3583-B, 2016 WL 193586, at *9 (N.D. Tex. Jan. 14, 2016). Linguistic ability does not change that range. *See Guaman v. J&C Top Fashion, Inc.*, No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *10–11 (S.D.N.Y. Feb. 22, 2016) (finding generally reasonable paralegal rates reasonable for bilingual paralegals). That said, the Court does not discount the work that Plaintiffs' bilingual paralegals did and therefore determines that their rates should be reduced to the top of range: $125 per hour.

       *iii. Conclusion*

       The Court has determined reasonable rates for Plaintiffs' counsel and settled on a reasonable number of hours for their work. With those conclusions in mind, the Court calculates Plaintiffs' final lodestar value as follows:

| Firm | Professional | Position | Rate | Hours | Lodestar |
|------|-------------|----------|------|-------|----------|
| Baron & Budd | Russell Budd | Attorney | $700 | 11.8989 | $8,329.23 |
| Baron & Budd | Allen Vaught | Attorney | $400 | 466.7949 | $186,717.96 |
| Baron & Budd | Sangeeta Kuruppillai | Attorney | $325 | 54.38745 | $17,675.92 |
| Baron & Budd | Ryan Burton | Attorney | $300 | 414.2502 | $124,275.06 |
| Baron & Budd | Melinda Arbuckle | Attorney | $295 | 203.4396 | $60,014.68 |
| Baron & Budd | Rob Hudock | Attorney | $325 | 18.26955 | $5,937.60 |
| Baron & Budd | Celia Rivera | Paralegal | $125 | 305.226675 | $38,153.33 |
| Baron & Budd | Stephanie Perkins | Paralegal | $75 | 34.090875 | $2,556.82 |
| Baron & Budd | Paul Thornton | Assistant | $45 | 26.47125 | $1,191.21 |
| Baron & Budd | Nick Smith | Assistant | $45 | 4.53375 | $204.02 |
| Wyatt Law Firm | Paula Wyatt | Attorney | $400 | 584.16228 | $233,664.91 |
| Wyatt Law Firm | James Perrin | Attorney | $325 | 6.318 | $2,053.35 |

| Wyatt Law Firm | Ryan Toomey | Attorney | $285 | 130.00078 | $37,050.22 |
| Wyatt Law Firm | Toni Ramirez | Paralegal | $125 | 558.03384 | $69,754.23 |
| Wyatt Law Firm | Nora Lopez | Paralegal | $75 | 72.116135 | $5,408.71 |
| Wyatt Law Firm | Aundria Martinez | Paralegal | $75 | 46.609745 | $3,495.73 |
| **Total** | | | | **2,936.6039** | **$796,482.99** |

2.    _Johnson_ Factors

The Court now must determine whether to alter the lodestar amount in light of the twelve _Johnson_ factors. They are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the requisite skill to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. _Johnson_, 488 F.2d at 717–19.

As set forth above, "[t]here is a strong presumption of the reasonableness of the lodestar amount." _Black_, 732 F.3d at 502. That said, the Court can enhance or decrease the lodestar value in light of the _Johnson_ factors if the party seeking adjustment meets its burden of proving an adjustment is warranted. _Id._; _Wherley v. Schellsmidt_, No. 3:12-cv-0242, 2014 WL 3513028, at *5 (N.D. Tex. July 16, 2014). "Many of the Johnson factors are 'presumably fully reflected in the lodestar amount,' however, so such modifications are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings." _Wherley_, 2014 WL 3513028, at *5 (quoting _Pennsylvania v. Del. Valley Citizens' Council for Clean Air_, 478 U.S. 546, 565

(1986)). What's more, "the United States Supreme Court has barred any use of the sixth factor and advised that the second factor generally cannot be used as a ground for enhancing the award." *SortiumUSA, LLC v. Hunger*, No. 3:11-cv-1656-M, 2015 WL 179025, at *3 (N.D. Tex. Jan. 14, 2015). Perhaps most importantly, however, "[t]he lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan*, 448 F.3d at 800.

Plaintiffs initially requested the Court enhance their base lodestar by 1.3 in light of the *Johnson* factors, citing "years of contingent fee and cost work for many clients who do not speak English attempting to sort out fake name and hard to match time and pay records involving numerous corporate 'employers' of Plaintiffs as they were shifted amongst Mr. Odeh's different restaurants." Doc. 123, Pls.' Br. 3. More specifically, Plaintiffs argue that the Court should adjust the lodestar value because of: (1) the novelty and complexity of the issues in the case; (2) the skill required to perform the legal services properly; (3) the customary fee charged for services in the relevant community and awards in similar cases; (4) Plaintiffs' counsel's contingent fee arrangement; and (5) the degree of success attained. *Id.* at 20–25. This resulted in a final request of $2,145,954.45. *Id.* at 3.

In response, Defendants urged that the facts in this case do not qualify as one of the rare and exceptional circumstances in which the lodestar should be adjusted upward. Doc. 134, Defs.' Resp. 42–44. Defendants argue that all of the points Plaintiffs rely on either are subsumed by the Court's lodestar calculation or cannot serve as a proper basis for increasing a fee award. *Id.* Instead, Defendants say, the Court should reduce the lodestar value by 18% to account for: (1) the seven Plaintiffs that were dismissed from the action; and (2) the lack of success Plaintiffs' counsel achieved

considering the disparity between Plaintiffs' earlier settlement demands—at one point over $13.5 million—and the amount the case ultimately settled for—$704,945.68. *Id.* at 41–42. That is especially true, Defendants contend, given that Plaintiffs sought roughly three times the final amount in fees. *Id.* at 42.

Plaintiffs' Reply focuses on just how difficult it was to untangle Defendants' fake name scheme in light of the linguistic and logistical hurdles posed by working with over 30 Plaintiffs that did not speak English but did share fake names. Doc. 138, Pls.' Reply 3–8. Plaintiffs also stress that the settlement offers that Defendants note in minimizing Plaintiffs' degree of success came so early in the proceedings that they were not a fair measure of the damages Plaintiffs truly sought. *Id.* at 4–5. Plaintiffs also allege that Defendants gloss over: (1) Plaintiffs' decision not to bring suit for civil RICO claims; (2) Defendants' refusal of Plaintiffs' two earlier offers of judgment that were for about $100,000 less than what Defendants agreed on; and (3) Defendants' alleged bad-faith efforts to "buy off" Plaintiffs and putative class members with de minimis amounts so they would not participate in this case. *Id.* at 3–8. Viewed in that light, Plaintiffs posit, their counsel prevailed on all of their claims. *Id.* at 7–8. And that degree of success, they contend, justifies an upward adjustment of the lodestar value. *Id.*

Defendants, in their Sur-Reply, reiterate their position that the Court should reduce its lodestar value by 18%. Doc. 144, Defs.' Sur-Reply 7. Defendants argue that their request is called for because Defendants' offers to some individual Plaintiffs do not provide a proper basis from which evaluate what the other Plaintiffs received in the offer of judgment. *Id.* Yet those offers should not even factor in, Defendants continue, because Plaintiffs' degree of success should be measured by comparing Plaintiffs'—*not* Defendants'—settlement demands to what they ultimately received. *Id.*

And that does not even facor in Plaintiffs' failure to recover against another entity that was improperly joined as a defendant and then later dismissed. *Id.* Taken together, Defendants conclude, these facts support the requested lodestar reduction. *Id.* at 7–8.

As with the lodestar value itself, the parties present a mountain of arguments to support their positions. Viewed at arm's-length, though, one can discern the forest from the trees. Plaintiffs argue that the impact of five of the twelve *Johnson* factors merits an upward adjustment. *See* Doc. 123, Pls.' Br. 20–25. One of those factors—that Plaintiffs' counsel worked on a contingent fee basis—is out of bounds from the start. *See SortiumUSA*, 2015 WL 179025, at *3 (explaining that the "Supreme Court has barred any use of" that factor). And the Court considered three others—the novelty and complexity of the issues in the case, the skill required to perform the legal services properly, and the customary fee charged for services in the relevant community and awards in similar cases—when calculating the lodestar. So they cannot be considered here. *See Saizan*, 448 F.3d at 800. That means both sides' positions boil down to one *Johnson* factor: the degree of success that Plaintiffs obtained.

The Fifth Circuit has made clear "that 'the most critical factor in determining an attorneys' fees award is the degree of success obtained.'" *Black*, 732 F.3d at 503 (quoting *id.* at 799). Success here is a monetary issue: Plaintiffs' recovery of overtime wages. *Cf. Santamaria ex rel Doe Children 1–3 v. Dallas Ind. Sch. Dist.*, No. 3:06-cv-0692-L, 2007 WL 2851111, at *6 (N.D. Tex. Sept. 30, 2007) (explaining that monetary damages may not always be the right measure of success). Plaintiffs argue that, in measuring that success, the Court should factor in Defendants' lowball offers to individual Plaintiffs. Defendants, by contrast, urge the Court to take into account Plaintiffs' settlement offers.

For starters, Plaintiffs' position is misguided and the authority they rely on is inapposite—Defendants' lowball offers do not determine the degree of Plaintiffs' success. *Cf. Marek*,

473 U.S. at 10–11; *see also* Doc. 144, Defs.' Sur-Reply 8 (explaining why Plaintiffs' reliance on *Marek* is incorrect). The Fifth Circuit instructs that success should be measured by comparing the amount of damages awarded to the amount of damages sought. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998); *see also Combs*, 829 F.3d at 395–96.

The Second Amended Offer of Judgment that Plaintiffs accepted was for $704,946.68—an amount that exceeded the first offer of judgment by $119,000 and the second by $99,000. Doc. 138, Pls.' Reply 8. That is successful. On the balance, however, the Court finds it is not so successful as to warrant an upward adjustment to the lodestar value. That is especially true when considered together with Plaintiffs' counsel's already relatively high fees award. While there is no "strict proportionality requirement" between the two, the Court finds that both awards are large enough as is. *See Combs*, 829 F.3d at 396–97.

On that note, the Court similarly disagrees with Defendants—no downward adjustment is warranted either. Defendants' only basis for a downward adjustment is Plaintiffs' allegedly low damages award. The Fifth Circuit has clarified that a low damages award alone is not enough to warrant a fee reduction in FLSA cases; in civil rights litigation, however, it is. *Combs*, 829 F.3d at 395 n.3. Both are at play here.

Defendants argue that the Court should consider Plaintiffs' settlement negotiations as evidence of the extent of their success. Doc. 134, Defs.' Resp. 41–44. That could potentially run afoul of Federal Rule of Evidence 408. Some circuits, however, have ruled that it does not. *See, e.g.*, *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 460–61 (9th Cir. 2013); *Lohman v. Duryea Borough*, 574 F.3d 163, 165–69 (3d Cir. 2009). The Fifth Circuit has not addressed the issue but the Court finds the reasoning of those Circuits that have persuasive. Nevertheless, the Court need not delve into

deep analysis on the matter here because a reduction is not in order.

Plaintiffs have already written off time for the seven Plaintiffs that were dismissed. And their damages award, considered against their other *offers of judgment*, was not low. *See Lohman*, 574 F.3d at 169 ("A court is also free to reject such evidence as not bearing on success when, for instance, negotiations occur at an early stage before discovery, or are otherwise not a fair measure of what a party is truly seeking in damages."). And even if it were, it was not so low as to have an impact significant enough to warrant an alteration. Thus, the Court finds no need to alter the lodestar value and therefore awards Plaintiffs attorneys' fees in the amount of $796,482.99.

B.    *Costs*

A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. *See* Fed. R. Civ. P. 54(d)(1). As set forth above, neither the FLSA nor Section 1981 provide otherwise. So costs are recoverable.

Plaintiffs initially sought $72.159.45 in costs. Doc. 123, Pls.' Br. 25. Defendants opposed this amount as unreasonable, arguing that Plaintiffs' claim is based in part on unrecoverable amounts and that they failed to provide adequate support for those amounts otherwise recoverable. Doc. 134, Defs.' Resp. 44–47. Accordingly, Defendants urged the Court to enter a costs award of no more than $42,753.13. *Id.* at 47.

Plaintiffs acquiesced to this number in their Reply. Doc. 138, Pls.' Reply 20. And Defendants reiterated the figure in their Sur-Reply. Doc. 144, Defs.' Sur-Reply 9. On that basis, the Court construes the parties' briefing, taken together, as akin to a joint stipulation for a costs award in that amount and therefore awards Plaintiffs $42,753.13 in costs.

C.   *Post-judgment Interest*

Plaintiffs' last petition is for post-judgment interest. *See* Doc. 123, Pls.' Br. 26–27. Plaintiffs make their request under 28 U.S.C. § 1961(a), which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." The Fifth Circuit has clarified that "civil case" includes those in which damages are awarded under the FLSA. *See Reeves v. Int'l Tel. & Tel. Corp.*, 705 F.2d 750, 751–52 (5th Cir. 1983) (explaining that "there is no reason to distinguish FLSA judgments from other claims" in this context).

Defendants raise no objections on this point. So the Court finds no reason to question it further. Accordingly, the Court grants Plaintiffs' final request that post-judgment interest be included in the judgment entered pursuant to this Order.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Plaintiffs' Motion (Doc. 123). The Court finds that Plaintiffs are entitled to attorneys' fees but not in the amount requested. The Court reduces the fees awarded in accordance with the lodestar standards of reasonableness. The Court further finds that Plaintiffs are entitled to taxable costs.

To those ends, the Court **ORDERS** Defendants to pay Plaintiffs **$796,482.99** in attorneys' fees and **$42,753.13** in taxable costs, totaling **$839,236.12**, subject to post-judgment interest.

SO ORDERED.

Dated: December 8, 2016.


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE